# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:09-0142 |
| | | CIVIL NO. 6:14-3444 |
| VERSUS | * | JUDGE HAIK |
| DON PAUL JACKSON | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Don Paul Jackson.  [rec. doc. 161].  The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 165 and 168].  For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE** on the merits and, alternatively, because petitioner's insufficient evidence, perjury and paid informant claims are procedurally defaulted.

## BACKGROUND

On July 14, 2009, Don Paul Jackson ("Jackson") was indicted on one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The charge stemmed from a DEA investigation of Jackson.  In 2009, Opelousas Police Chief Perry Gallow told Opelousas Police Department Captain Mark Guidry that an informant and former police officer, Seth Wayne Johnson ("Johnson"), was willing to participate in the investigation.[1]

---

[1]rec. doc. 114, pg. 124, tr. trs. pg. 124.

Captain Guidry arranged for Johnson to record a conversation with Jackson, wherein Jackson agreed to sell crack cocaine to Johnson.  This conversation occurred on March 24, 2009.[2]  The recording was given to Agent Vernon Jones who was assigned to the DEA Task Force.[3]  After meeting with Agent Jones, Johnson agreed to make a controlled purchase of drugs from Jackson on April 7, 2009.[4]  The recording of the March 24, 2009 conversation was played to the jury while the transcript of the recording was published on screen for the jury to contemporaneously view.[5]

Prior to the purchase on April 7, 2009, Captain Guidry, Chief Gallow and several DEA agents met Johnson, the informant, in a "neutral location."[6]  At that time, Johnson and his vehicle were searched, Captain Guidry placed audio and video surveillance equipment on Johnson and Agent Jones gave Johnson $2,200 in "official advance funds" to complete the purchase.[7]  Johnson then called Jackson to arrange the deal.[8]  The recording of this conversation was played to the jury.[9]

---

[2]rec. doc. 114, pg. 125-128, tr. trs. pg. 124-128.

[3]rec. doc. 114, pg. 128-129, tr. trs. pg. 128-129.

[4]rec. doc. 114, pg. 129-130, tr. trs. pg. 129-130 (Guidry); rec. doc. 114, pg. 27-28, tr. trs. pg. 27-28 (Jones).

[5] rec. doc. 114, pg. 179-185, tr. trs. pg. 179-185.

[6] rec. doc. 114, pg. 130, tr. trs. pg. 130.

[7] rec. doc. 114, pg. 131-133, tr. trs. pg. 131-133 (Guidry);  rec. doc. 114, pg. 28-30, tr. trs. pg. 28-30 (Jones).

[8] rec. doc. 114, pg. 133, tr. trs. pg. 133 (Guidry);  rec. doc. 114, pg. 30, tr. trs. pg. 30 (Jones).

[9] rec. doc. 114, pg. 187-189, tr. trs. pg. 187-189.

2

The Law Enforcement officers followed Johnson to Jackson's residence and then to a club operated by Jackson.  Thus, Johnson was under visual surveillance when en route.[10]  When Johnson entered the club, the officers were still monitoring Jackson through the audio equipment.  Accordingly, they heard the conversation of the meeting between Johnson and Jackson.[11]  Agent Jones testified that he heard Jackson ask the amount of drugs Johnson wanted, one, two, three or four cookies of crack cocaine.[12]  Both Agent Jones and Captain Guidry testified that they heard the counting of money during this transaction.[13]  Johnson testified that he ultimately purchased two cookies of crack cocaine from Jackson in exchange for the money officers had given him.[14]  The entire video recording of this transaction was played to the jury.[15]

After Johnson left the club, the officers again visually surveilled Johnson to another neutral location, where Johnson was searched by Captain Guidry and his vehicle was searched by Agent Jones.[16]  The officers retrieved 50.2 grams of cocaine Johnson had

---

[10] rec. doc. 114, pg. 133-135, tr. trs. pg. 133-135 (Guidry);  rec. doc. 114, pg. 32-33, tr. trs. pg. 32-33 (Jones).

[11] rec. doc. 114, pg. 135-136, tr. trs. pg. 135-136 (Guidry);  rec. doc. 114, pg. 30-34, tr. trs. pg. 30-34 (Jones).  .

[12] rec. doc. 114, pg. 33, tr. trs. pg. 33.

[13] rec. doc. 114, pg. 136, tr. trs. pg. 136 (Guidry);  rec. doc. 114, pg. 34, tr. trs. pg. 34 (Jones).

[14] rec. doc. 114, pg. 190, tr. trs. pg. 190.

[15] rec. doc. 114, pg. 189-196, tr. trs. 189-196.

[16] rec. doc. 114, pg. 136-138, tr. trs. 136-138 (Guidry); rec. doc. 114, pg. 34-35, tr. trs. 34-35 (Jones).
.

purchased from Jackson.[17]

Johnson was paid $400.00 for his assistance.[18]  Johnson admitted that he had been arrested for malfeasance in office, sexual battery, stalking, intimidation by an officer and aggravated criminal damage to property and that charges were still pending against him.[19]

At the conclusion of the government's case, defense counsel Roy Joseph Richard, Jr. ("Mr. Richard") moved for a judgment of acquittal.  The Court denied the Motion stating "I don't even need a response for that.  I think that there's overwhelming evidence presented by the government to this point." [rec. doc. 115, pg. 93, tr. trs. pg. 292].

At the conclusion of a two day trial, on April 6, 2010, the jury found Jackson guilty as charged. [rec. doc. 115, pg. 184, tr. trs. pg. 383].  Jackson was sentenced on September 28, 2010 to 240 months imprisonment. Jackson appealed only his sentence, which was affirmed by the Fifth Circuit on April 17, 2012.  [rec. doc. 121, *United States v. Jackson*, No. 10-31022 (5th Cir. 2012)].  Certiorari was granted by the United States Supreme Court, which vacated petitioner's sentence on June 29, 2012 in light of the June 21, 2012 decision in *Dorsey v. United States*, - - U.S. - - , 132 S.Ct. 2321, 183 L.Ed.2d

---

[17]rec. doc. 114, pg. 34-38, tr. trs. 34-38 (Jones); rec. doc. 114, pg. 170, tr. trs. pg. 170 (Iwamoto).

[18]rec. doc. 114, pg. 54, tr. trs. 54 (Jones); rec. doc. 115, pg. 7 and 16, tr. trs. pg. 206 and 215 (Johnson).

[19]rec. doc. 115, pg. 7-8 and 13-16, tr. trs. pg. 206-207 and 212-215.

4

250 (2012). [rec. doc. 122, *United States v. Jackson*, No. 11-9938 (2012)]. On remand, petitioner was re-sentenced on July 30, 2013 to 120 months imprisonment. [rec. doc. 135]. Petitioner's subsequent appeal to the Fifth Circuit was dismissed on March 12, 2014 on motion by Jackson. [rec. doc. 155].

In the instant motion to vacate was filed on December 15, 2014. Petitioner asserts the following claims for relief: (1) that he received ineffective assistance of counsel, (2) that there was insufficient evidence to support his conviction, (3) that he was convicted with the use of perjured testimony and (4) that the government improperly used testimony of a paid informant. These claims are discussed below.

## LAW AND ANALYSIS

### Claims Properly Considered in this § 2255 Motion/Scope of Review

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides four grounds justifying relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal." *United States v. Shaid,* 937 F.2d 228, 231

5

(5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141

(1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982).

Following a conviction and exhaustion or waiver of the right to direct appeal, federal

courts presume a defendant stands fairly and finally convicted.  *United States v.*

*Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at

231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to

questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109;

*Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).

However, those issues may not be raised for the first time on collateral review

without a showing of both cause for the procedural default and actual prejudice resulting

from the error.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456

U.S. at 166.  The only exception to the cause and prejudice requirement is the

"extraordinary case . . . in which a constitutional violation has probably resulted in the

conviction of one who is actually innocent"  *Shaid*, 937 F.2d at 232; *Murray v. Carrier*,

477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986).  To establish actual innocence petitioner

must demonstrate that, "in light of all the evidence, it is more likely than not that no

reasonable juror would have convicted him."  *Bousley v. United States*, 523 U.S. 614,

623, 118 S.Ct. 1604, 1611 (1998) (internal quotations and citations omitted).  In this

context, "actual innocence" means factual innocence, not mere legal insufficiency.  *Id*.

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 *citing United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).  The standard to establish a "fundamental miscarriage of justice" is the same as the "actually innocent" standard.  *United States v. Sorrels*, 145 F.3d 744, 749 fn. 3 (5th Cir. 1998) (citations omitted).

Under the applicable law, the government is correct that all of petitioner's claims, except his ineffective assistance of counsel claim, are procedurally barred and may not properly be considered in this § 2255 Motion as these claims were not presented on direct appeal and petitioner has failed to demonstrate either cause or prejudice for his default, his actual innocence or that a miscarriage of justice will result by this Court's refusal to consider these claims.  Petitioner's  insufficient evidence, perjured testimony and paid informant claims are therefore properly denied solely on grounds of procedural default.  Nevertheless, all of petitioner's claims will be addressed on the merits.

**I. Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence presented to establish that he knowingly or intelligently distributed crack cocaine.  Petitioner argues, by affidavit, that he sold Viagra to Johnson, not crack cocaine, and that his entire prosecution was based on a conspiracy between the law enforcement officers and Johnson to set him up because

Officer Gallow believed the he, Jackson, had an affair with Officer Gallow's mistress. This evidence, however, was not presented at trial.

Sufficiency of the evidence review is limited to "record evidence." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861 (1993) *citing Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979*)*.  Such review "does not extend to nonrecord evidence, including newly discovered evidence."  *Id*.

Under *Jackson v. Virginia*[20], on sufficiency of the evidence review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993).  Accordingly, relief is appropriate only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

Under the *Jackson* standard, a court may find sufficient evidence to support a conviction "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783; *see also United States v. Lechuga*, 888 F.2d 1472, 1476 (1989).  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319,

---

[20]443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

324-25, 99 S.Ct. at 2789, 2792 and *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979)

(*per curiam*).  The fact that most of the evidence against a defendant was circumstantial

does not change the standard of review.  *United States v. Zuniga-Salinas*, 945 F.2d 1302,

1305 (5th Cir. 1991) *citing Lechuga*, 888 F.2d at 1476.

      Moreover, review of the sufficiency of the evidence does not include review of the

weight of the evidence nor the credibility of the witnesses, as those determinations are the

exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir.

2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d

at 561 *citing United States v. Greenwood*, 974 F.2d 1449,1458 (5th Cir. 1992); *United*

*States v. Straach,* 987 F.2d 232, 237 (5th Cir. 1993); *Schrader*, 904 F.2d at 287; *United*

*States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999); *see also Jackson*, 443 U.S. at 319

(noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh

the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Accordingly, "whether judges doubt the credibility of a witness, even an accomplice

witness cooperating with the government, is beside the point . . . ." *Greenwood*, 974 F.2d

at 1458.  All credibility choices and conflicting inferences are to be resolved in favor of

the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing Cyprian*, 197 F.3d

at 740.  The reviewing court is not authorized to substitute its interpretation of the

evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.

1985).

In this case, viewing the record evidence in the light most favorable to the prosecution as is required by *Jackson* and its progeny, the evidence presented at trial was sufficient to sustain petitioner's distribution of cocaine base conviction.  Given the above summarized evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Although there were inconsistencies between the witnesses' trial testimonies, their substantive testimonies were nevertheless consistent.  Petitioner essentially urges this Court to make credibility determinations and to weigh the evidence in his favor.  However, on a sufficiency of the evidence review, it is not the province of this Court to make credibility determinations or to review the weight of the evidence accepted by the jury. *See Young, Garcia, Greenwood, Straach, Cyprian* and *Jackson*, *supra*.

Although the jury could have rejected the testimony of the law enforcement officers and paid informant, Johnson, and could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of these witnesses.  Their testimony establishes that on April 7, 2009 petitioner sold Johnson two cookies of crack cocaine weighing 52 grams, for a total of $2,200.00 or $1100.00 per cookie.  Moreover, the jury listened to the audio-taped recordings of the March 24, 2009 and April 7, 2009 telephone conversations between petitioner and Johnson and viewed the videotaped recording of the April 7, 2009 transaction. This testimony and audio and video recorded evidence is sufficient to establish that petitioner knowingly and intentionally distributed fifty or more grams of cocaine base, a schedule II narcotic controlled

substance, as charged in the Indictment.

Moreover, while petitioner discredits Johnson's testimony because he was paid for his services and the testimony of the law enforcement officers and Johnson because of alleged inconsistencies between their testimonies, the jury reasonably found that these discrepancies were entitled to little, if any, weight.  This Court cannot find the testimony accepted by the jury so incredible or insubstantial that, as a matter of law, it can be discounted.  Petitioner's complaints are therefore meritless. For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

## II. Use of Perjured Testimony

Petitioner contends that the government presented the perjured testimony of Captain Guidry, Agent DeSalvo and Agent Jones in order to obtain petitioner's conviction. These claims are discussed briefly below.

The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using perjured testimony. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir.2000) *citing Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) *citing Giglio*, 405 U.S. at 153 and *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *U.S. v. Guillory*, 2013 WL 4782211, *9 (W.D. La. Sep 05, 2013).

To obtain relief on grounds that the government relied on perjured testimony, the defendant must show: (1) that a witness for the government testified falsely; (2) that such

11

testimony was material; and (3) that the prosecution knew that the testimony was false.
*Knox,* 224 F.3d at 477 *citing Giglio* at 153–54, 92 S.Ct. 763; *Mason,* 293 F.3d at 828
*citing Giglio* and *Knox, supra.*; *United States v. Haese,* 162 F.3d 359, 365 (5th Cir.1998)
*citing Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173(1959); *Guillory,* 2013 WL 4782211,
at *9.

"Conflicting or inconsistent testimony is insufficient to establish perjury."
*Kutzner v. Johnson,* 242 F.3d 605, 609 (5th Cir. 2001) *citing  Koch v. Puckett,* 907 F.2d
524, 531 (5th Cir. 1990); *Guillory,* 2013 WL 4782211, at *9.  Rather, such testimony
merely presents a credibility question for the jury. *Guillory,* 2013 WL 4782211, at *9;
*Koch,* 907 F.2d at 531; *Tucker v. Day,* 969 F.2d 155, 158–159 (5th Cir.1992) *citing Little
v. Butler,* 848 F.2d 73, 76 (5th Cir. 1988).

Perjury is material, if "there is any reasonable likelihood that the false testimony
could have affected the judgment of the jury." *Creel v. Johnson,* 162 F.3d 385, 391 (5th
Cir. 1998); *Knox,* 224 F.3d at 478 *quoting Giglio,* 405 U.S. at 154.  Accordingly,  perjury
relating to collateral matters does not violate the Constitution.  *Creel,* 162 F.3d at 392.

For the reasons which follow, petitioner fails to satisfy the above enumerated
factors.  Accordingly, this claim is without merit.

Petitioner fails to demonstrate that the challenged testimony of Captain Guidry,
Agent DeSalvo and Agent Jones constituted perjury.  Although petitioner points out
alleged inconsistencies in the individual witness' own testimony and inconsistencies

between the testimony of these witnesses, contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflict between reports, written statements and the trial testimony of witnesses do not constitute perjury. *Ruiz v. Cockrell*, 2003 WL 22038350, *9, *adopted by* 2003 WL 22231294 (N.D. Tex. 2003) *citing  Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *Guillory,* 2013 WL 4782211, at *9; *Tucker*, 969 F.2d at 158-159 *citing Little*, 848 F.2d at 76.

 With respect to Captain Guidry, petitioner argues that he perjured himself when he responded "yeah" to the prosecutor's question as to whether he listened to the recording of the March 24, 2009 conversation between Johnson and Jackson before turning the recording over to Agent Jones.  Then, immediately thereafter testified that because the recording was lengthy, he listened only to the time frame where narcotics were discussed. Petitioner therefore interprets Captain Guidry's initial testimony as constituting perjury because he apparently did not listen to the entire tape at that time. [rec. doc. 114, pg. 127, tr. trs. pg. 127].  Petitioner argues that testimony was material because had Captain Guidry listened to the entire conversation he would have discovered that the drug deal involved Viagra.

 Viewing the testimony in context, Captain Guidry's initial response cannot fairly be interpreted as a claim by Guidry that he listened to the entire tape recording at that time.  Moreover, as the government correctly notes, Captain Guidry later testified that he did, in fact, listen to the entire tape with the AUSA.  Thus, the testimony does not

constitute perjury.  Furthermore, regardless of petitioner's interpretation of the passage, the testimony is not material.  Even if Captain Guidry had not at any time listened to the entire recording, the jury listened to the tape recording of the conversation while contemporaneously reading the written transcript of the conversation, and in combination with all of the other evidence presented at trial, obviously concluded that the conversation involved crack cocaine, not Viagra.

Petitioner next contends that Captain Guidry perjured himself when he testified that he searched the informant, Johnson, and his vehicle before the April 7, 2009 controlled buy.  Petitioner asserts that no such searches ever occurred.  Accordingly, petitioner speculates that Johnson had the crack cocaine before the transaction occurred.  Petitioner's contention is primarily based on Captain Guidry's testimony as to whether he conducted the searches before or after the other officers arrived.  Although there may have been some ambiguity as to the exact time of the search in Guidry's initial general testimony on direct[21] given defense counsel's more specific questioning during cross-examination[22], it is clear that Guidry  ultimately clarified the timing of his searches on redirect.  On re-direct, Guidry testified "[w]hen the officers got there, before I started wiring him up, I did a search of him.  Then before I put the equipment in his vehicle – I did a search of his vehicle before putting in the recording equipment – or the transmitting

---

[21]rec. doc. 114, pg. 131, tr. trs. pg. 131.

[22]rec. doc. 114, pg. 147-148, tr. trs. pg. 147-148.

equipment in his vehicle."[23]

Captain Guidry's testimony was corroborated by Agent DeSalvo, who testified that he believed it was Guidry who conducted the search of Johnson's person and that he and local law enforcement officers searched the vehicle before the controlled buy[24], and Agent Jones, who testified that Captain Guidry searched Johnson and his vehicle[25], as well as Johnson, who likewise testified that he and his vehicle were searched prior to the transaction.[26]  While Agent Jones also testified on cross-examination that he did not see the searches being performed by Captain Guidry because they were done in advance of his arrival[27], any inconsistency between the testimony of Captain Guidry and Agent Jones merely presents a credibility question for the jury and does not establish perjury. *Guillory*, *Ruiz, Koch, Kutzner*; and *Tucker citing Little*, *supra*.  For these reasons, petitioner has not demonstrated that Captain Guidry committed perjury.

Petitioner next alleges that Agent Jones committed perjury in connection with his testimony as to when and how he first became involved in the investigation of petitioner. On direct examination, Agent Jones testified that he was placed in contact with the informant, Johnson, by Chief Gallow and Captain Guidry.  He further generally testified

---

[23]rec. doc. 114, pg. 159-160, tr. trs. 159-160.

[24]rec. doc. 115, pg. 55-56, 77-78, 89, tr. trs. pg. 254-255, 276-277, 288.

[25]rec. doc. 114, pg. 29, tr. trs. pg. 29.

[26]rec. doc. 114, pg. 187, tr. trs. pg. 187; rec. doc. 115, pg. 21, 26, 43, tr. trs. 220, 225, 242.

[27]rec. doc. 114, pg. 68 and 77, tr. trs. pg. 68 and 77.

that Captain Guidry gave the March 24, 2009 recording to him and that he contacted Agent DeSalvo and arranged a meeting with the informant, which Agent DeSalvo attended.[28]  On cross examination, counsel attempted to clarify the exact time line of these events.  Agent Jones testified that before March 24, 2009 Chief Gallow and Captain Guidry advised him of the potential confidential informant.  Accordingly, he and Officer Washington debriefed the informant on the morning of March 24, 2009.   At that time Johnson was not yet a "documented" confidential informant through the DEA.  After that debriefing, Captain Guidry, independent of the DEA, wired the informant and obtained the March 24, 2009 conversation between Johnson and Guidry.  That afternoon, Agent Jones spoke to Captain Guidry and was advised of the existence of the recording and it was provided to him.[29]

There is nothing perjurious about Agent Jones' testimony.  To the contrary, Agent DeSalvo corroborated Agent Jones' account.  Agent DeSalvo testified that his first interaction with Johnson was when he documented Johnson as a DEA confidential informant, which is required DEA protocol, and that he ultimately approved further investigation be conducted.[30]  Agent DeSalvo further testified that he does not appear at every debriefing, only those which he is required to attend under DEA protocol.[31]

---

[28]rec. doc. 114, pg. 24-28, tr. trs. 24-28.

[29]rec. doc. 114, pg. 63-67, tr. trs. pg. 63-67.

[30]rec. doc. 115, pg. 54, 72, tr. trs. pg. 253, 271.

[31]rec. doc. 115, pg. 68, tr. trs. pg. 267.

16

Petitioner apparently contends, on the basis of his own signed "affidavit" dated December 11, 2014, that Agent Jones' testimony about when and how he became involved in the investigation against petitioner constitutes perjury.  In his affidavit Jackson states that Johnson told him that Opelousas Police Department Officer Roylis Gallow, who was having an affair with Johnson's sister, caught him, Johnson, with drugs when Johnson was sitting in his truck in his sister's driveway.  Officer Gallow allegedly searched Johnson's truck and found photographs of his sister with Jackson, which infuriated Officer Gallow, and compelled him to fabricate charges against Jackson out of spite.  Officer Gallow therefore allegedly told Johnson to become an informant or go to prison.  However, Johnson told Jackson that he did not think that Officer Gallow would "turn in the drugs" because of the relationship Officer Gallow had with Johnson's sister. Petitioner concludes that the two cookies, which were the subject of the April 7, 2009 drug transaction for which he was convicted, were, in fact, the drugs taken from Johnson, and that all of the officers involved in Jackson's prosecution, including Captain Guidry, Agent Jones and Agent DeSalvo, conspired to fabricate a case against him.  [*See* rec. doc. 161-2, pg. 14-19].

In the instant Motion, Jackson speculates that had this information been presented at trial, Agent Jones' testimony would have been proven false, as this evidence would have demonstrated that Officer Gallow "involved" Agent Jones in the investigation, presumably before Agent Jones was contacted by Chief Gallow and Captain Guidry, and

17

that it was Agent Jones who pressured Johnson to contact Chief Gallow to become a confidential informant.  Petitioner further speculates that had Chief Gallow and the government known of this information, Chief Gallow would not have given Captain Guidry permission to proceed with any further investigation of Jackson, the grand jury would not have indicted him and the government would not have pursued the prosecution.

The Court cannot accept petitioner's self-serving, unsupported and conclusory affidavit in support of petitioner's perjury claim. The affidavit is simply not reliable, is incompetent and insufficient for this purpose; it consists entirely of hearsay and unsupported conclusions and speculation.  *See United States v. Franks,* 397 Fed. Appx. 95, 101 (5th Cir. 2010) *citing United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) and *United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir.), *cert. denied*, 552 U.S. 982, 128 S.Ct. 456, 169 L.Ed.2d 319 (2007);  *Herrera v. Collins*, 506 U.S. at 418; *United States v. Merrill*, 340 Fed. Appx. 976, 978 (5th Cir. 2009) *citing Cervates* and *Demik, supra*.;

Moreover, the affidavit filed in this collateral proceeding is particularly suspect in that it was given over four years after petitioner's trial. No satisfactory explanation has been given as to why petitioner waited until now to make his statement.  Equally troubling, no explanation has been offered as to why petitioner, by hypothesis an innocent man, did not present any of this evidence at trial.  Additionally, the affidavit itself contains inconsistencies, and therefore fails to provide a convincing explanation of the

18

origin of, or motive behind, petitioner's prosecution.  Finally, petitioner identifies no other evidence to substantiate his present self-serving conclusory allegations.

Had this sort of testimony been offered at trial, it could have been weighed by the jury, along with the evidence offered by the government and petitioner, in deliberating upon its verdict.  Since the self-serving, conclusory statements in the affidavit contradict the evidence received at trial, the jury would have had to decide important issues of credibility.  However, coming over four years after petitioner's trial, this showing falls far short of that which would have to be made in order to substantiate petitioner's present claims.

Furthermore, the affidavit does not present any independent indicia of the likely merit of petitioner's allegations. *See Cervantes*, 132 F.3d at 1111 *citing  Davis v. Butler*, 825 F.2d 892, 893-95 (5th Cir. 1987).  As the Supreme Court has noted, such an affidavit must be considered in light of the proof of petitioner's guilt at trial.  *Herrera v. Collins*, 506 U.S. at 418.  The proof at trial included the testimony of three law enforcement officers, none of whom have been shown to have had any personal motive to fabricate evidence against petitioner, and numerous telephone conversations between Johnson and petitioner, implicating petitioner in the sale of the two crack cocaine cookies recovered by the officers. That proof, even when considered alongside petitioner's self-serving, belated, conclusory and unsupported affidavit, points overwhelmingly to petitioner's guilt.  Indeed, in light of the evidence presented at trial, and in particular the recorded conversations

between petitioner and Johnson, the allegations contained in petitioner's affidavit are wholly incredible.

For these reasons, petitioner's claim lacks merit.

Petitioner also claims that the government committed a *Brady* violation by failing to disclose the information alleged in petitioner's affidavit, including information about Johnson being allegedly caught by Officer Gallow with drugs.  That claim lacks merit.  In order to establish a *Brady* claim, petitioner must also establish that the challenged favorable, material evidence "was not discoverable through due diligence."  *Pondexter v. Quarterman,* 537 F.3d 511, 526 (5th Cir. 2008) *quoting Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) and *citing Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997). Thus, the government is not required by *Brady* to supply a defendant with "evidence that [was] fully available . . . through the exercise of reasonable diligence".  *Kutzner*, 303 F.3d at 336.  Stated differently, "[e]vidence is not 'suppressed' if the defendant 'knows or should know of the essential facts that would enable him to take advantage of it'".  *Id. quoting United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (citation omitted).  *See also United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980) ("[W]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim". (citations omitted)).

In this case, petitioner asserts only that the government suppressed statements which were allegedly made by Johnson to petitioner.  It follows then, that if Johnson actually made these statements to petitioner, petitioner, of course, was fully aware of them.  Thus, because petitioner obviously possessed the alleged information at the time of trial, but failed, for whatever reason to use it, petitioner has no claim under *Brady*. *See Pondexter*, 537 F.3d at 526-527.

Next, petitioner asserts that Agent Jones lied about the content of the April 7, 2009 phone call which preceded the transaction.  More specifically, petitioner argues that contrary to Agent Jones' testimony, the call did not involve a conversation about drugs because there was no drugs or prices mentioned.  The Court has reviewed the trial transcript and finds no perjury.  Agent Jones never testified that Johnson and Jackson discussed drugs in this particular conversation. To the contrary, Agent Jones testified during cross examination that he could not recall the content of that conversation without looking at the transcript.[32]  This is understandable given that the government did not play the recording during Agent Jones' direct examination, instead opting to play the tape during the testimony of a later witness.[33]  After being shown the transcript, Agent Jones admitted that this conversation did not specifically mention drugs or prices.[34]

---

[32]rec. doc. 114, pg. 70, tr. trs. pg. 70.

[33]rec. doc. 114, pg. 31, tr. trs. pg. 31.

[34]rec. doc. 114, pg. 70-73, tr. tsc. pg. 70-73.

The same is true with respect to petitioner's claim that Agent Jones lied when he testified that he was present when the pre-deal call was made and that official advanced funds were given to Johnson to complete the deal.  These contentions are based on petitioner's allegation that none of these actions were recorded on the surveillance tape. The fact that no recorded evidence of these actions exists, however, does not render Agent Jones' testimony false.  To the contrary, the jury was free to accept or reject Agent Jones testimony, whether or not his actions were caught on video. To the extent that petitioner argues that Agent Jones lied about handing Johnson the buy money because Agent DeSalvo had not yet arrived with the money, that claim is meritless.  The timing of the exchange of funds, as well as whether such funds were actually provided was a question for the jury.   Any inconsistencies between the testimony of Agent Jones and Agent DeSalvo presents a jury question and does not constitute perjury.  *Guillory*, *Ruiz, Koch, Kutzner*; and *Tucker citing Little*, *supra.*  This is particularly true, given that, other than petitioner's self-serving conclusory allegations, there is no evidence to support that such an exchange did not, in fact, occur.

Lastly, petitioner alleges that Agent DeSalvo committed perjury when testifying about his knowledge of the amount of funds necessary for the controlled buy.  Petitioner argues that Agent DeSalvo could not have known the amount of money necessary to complete the transaction based solely on the recorded conversations between Johnson and Jackson.  Review of the trial transcript reveals no perjury.  To the contrary, on cross-examination Agent DeSalvo testified that he did not recall how he determined the amount

of money needed for the transaction; he would have to "review the calls" and "have to go through things."  Agent DeSalvo further testified that he had spoken with Johnson prior to the transaction.  Moreover, DeSalvo testified that generally, he would get enough money to cover what he believed was going to be purchased, sometimes he got too much, sometimes he did not get enough, and sometimes the price changed and he would just "take a guess at it."[35] While petitioner apparently faults this answer as insufficiently detailed, that does not make the answer perjurious.  To the contrary, the record reflects the opposite. This claim therefore fails as petitioner hasn't demonstrated Agent DeSalvo's testimony was false.

In sum, petitioner has presented no more than conflicts and inconsistencies between the testimony of the government's witnesses as to the details of the transaction and their investigation. However, such conflicting or inconsistent testimony is insufficient to establish perjury.    Rather, such testimony merely presents a credibility question for the jury. *Guillory*, 2013 WL 4782211, at *9; *Koch*, 907 F.2d at 531; *Tucker*, 969 F.2d at158–159 *citing Little*, 848 at 76; *Ruiz*, 2003 WL 22038350, at *9; *Kutzner*, 242 F.3d at 609.

## III.  Ineffective Assistance of Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th  Cir. 1996).  Thus, petitioner's ineffective assistance of counsel claim is the only claim properly

---

[35]rec. doc. 115, pg. 186, tr. trs. pg. 274.

before this Court.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986).

Courts may "not find ineffective assistance of counsel merely because [the court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  Rather, "[a]

24

conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[36] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Sayre*, 238 F.3d at

---

[36]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.
*Strickland, supra*, at pages 691-692.

635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Petitioner contends that his counsel failed to effectively cross-examine the government's witnesses, thereby allowing the witnesses' credibility to be improperly assessed by the jury.  In this regard, petitioner suggests that counsel was ineffective for failing to challenge the alleged perjurious statements outlined above.  Petitioner further suggests that counsel should have confronted Agent Jones regarding when and how he became involved in the investigation against petitioner.  Presumably, petitioner is referring to the alleged encounter between Officer Gallow and Johnson at Johnson's sister's house wherein Officer Gallow allegedly found Johnson in possession of drugs.

"Because decisions regarding cross-examination are strategic, they usually will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.2d 467, 472 (5th

Cir. 2014) (internal quotation and citation omitted).   In this case, petitioner has not

overcome the strong presumption that counsel's decision to explore some issues and not

others during cross-examination of the government's witnesses was sound trial strategy,

nor has he shown counsel's performance during cross-examination was deficient.  The

record reflects that counsel did, in fact, vigorously cross-examine each of the

government's witnesses, highlighting conflicts and inconsistencies in and between their

testimonies about the events surrounding the charged drug transaction and the details of

their investigation.  Indeed, the majority, if not all, of the testimony cited by petitioner in

support of his perjury claims was elicited by defense counsel during cross-examination.

Moreover, the record reflects that defense skillfully elicited testimony unfavorable to the

government's case from each witness, and then used the information received to cast

doubt upon petitioner's guilt during closing argument.  Under these circumstances, and on

the record before this Court, the first *Strickland* prong is clearly not met.

With respect to petitioner's claim that counsel was ineffective for failing to

challenge the alleged perjurious statements outlined above, that claim is likewise without

merit.  Petitioner has failed to demonstrate perjury in the first instance.  Accordingly,

petitioner has not met the second *Strickland* prong.  Although petitioner speculates that

counsel's alleged deficiency resulted in prejudice, his self serving conclusory statements

to this effect "fall far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d

at 635.

Finally, to the extent that petitioner faults counsel for failing to confront Agent Jones or Johnson about Officer Gallow's alleged discovery of drugs in possession of Johnson, that claim merits no relief.  Initially, the court notes that, for the reasons set forth above, there is no competent evidence that this encounter actually occurred.  Moreover, even if petitioner had made counsel aware of petitioner's present claim that Officer Gallow had found Johnson in possession of drugs prior to the institution of the investigation, petitioner has not overcome the strong presumption that counsel's failure to bring the matter up at trial was reasonable trial strategy. *See  Bernard,* 762 F.3d at 472; *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 790, 178 L.Ed.2d 624 (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'").

More specifically, even if defense counsel had been informed by petitioner that such an encounter had occurred, it was not objectively unreasonable for counsel not to attempt to elicit this testimony from Agent Jones or Johnson. There is no documented evidence that the encounter occurred; petitioner himself suggests that Johnson was not arrested for this alleged criminal conduct.  Moreover, there is no evidence to suggest that either witness would have, in fact, confirmed this information.  To the contrary, it is equally likely that such questioning by defense counsel could have resulted in the presentation of testimony unfavorable to petitioner – flat denials of petitioner's story. Instead, it is clear that counsel chose to undermine Agent Jones' and Johnson's credibility with other issues, including Johnson's payment for his services and Johnson's prior

documented arrests, for which charges remained pending, and about which there could be no denial.[37]

Under these circumstances, petitioner has not overcome the presumption that the decision made by defense counsel was not reasonable trial strategy.  Therefore, counsel's performance was not deficient; the first *Strickland* prong has not been satisfied.  *See Strickland*, *Green*, *Cavitt, Martinez*, and *Crane, supra.*

For these reasons, petitioner is not entitled to relief on his ineffective assistance of counsel claim.

## IV.  Paid Informant's Testimony

Petitioner asserts that the government failed to disclose that Johnson was, in fact, a paid informant thereby violating its obligations under *Brady v. Maryland,*  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, petitioner "must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material." *Brady*, 373 U.S. at 87.  In this case, the prosecution did not suppress the fact that Johnson was a paid informant.  To the contrary, the record reveals that the government repeatedly elicited evidence that Johnson was paid $400.00 for his services and the defense likewise established this fact, without limitation, during cross-examination.[38]  Thus, there was no *Brady* violation.

---

[37]rec. doc. 115, pg, 13-16, tr. trs. pg. 212-215.

[38] rec. doc. 114, pgs. 54 and 91, tr. trs. pgs. 54 and 91 (Jones); rec. doc. 114, pgs. 158-159, tr. trs. pgs. 158-159 (Guidry);  rec. doc. 115, pgs. 7 and 16, tr. trs. pg. 206 and 215 (Johnson).

Petitioner further asserts that the admission of Johnson's testimony was improper because the Court did not properly charge the jury about the credibility of paid witnesses as required under the Fifth Circuit's decision in *United States v. Cervantes–Pacheco*, 826 F.2d 310, 315-316 (5th Cir. 1987) (*en banc*).

In *Cervantes–Pacheco*, the Fifth Circuit held that while the testimony of a paid witness is not *per se* inadmissable, admission of such testimony is conditioned on compliance with four rules: (1) the government must not deliberately use or encourage perjured testimony; (2) the prosecution must comply with *Brady*; (3) the defense must be allowed to fully explore the compensation arrangement on cross-examination; and (4) the district court must give specific instructions to the jury about the credibility of paid witnesses.

Contrary to petitioner's present allegations, the Court did, in fact, properly instruct the jury about the credibility of paid informants.[39]  Indeed, the instruction given by the Court was virtually identical to the Fifth Circuit's pattern jury instruction for testimony of a paid informant which has been repeatedly cited with approval in numerous cases.  *See* Fifth Circuit Pattern Jury Instructions: Criminal § 1.14 (2012) and Note (citing cases).[40]

---

[39]rec. doc. 115, pg. 166-167, tr. trs. pg. 365-366.

[40]Fifth Circuit Pattern Jury Instructions: Criminal § 1.14 (2012) provides as follows:

> The testimony of an alleged accomplice, and/or the testimony of one who provides evidence against a defendant as an informer for pay, for immunity from punishment, or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must

Accordingly, this claim is without merit.

For the foregoing reasons, the undersigned recommends that Don Paul Jackson's § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE** on the merits and alternatively, because petitioner's insufficient evidence, perjury and paid informant claims are procedurally defaulted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except**

---

decide whether the witness's testimony has been affected by these circumstances, by the witness's interest in the outcome of the case, by prejudice against the defendant, or by the benefits that the witness has received either financially or as a result of being immunized from prosecution. You should keep in mind that such testimony is always to be received with caution and weighed with great care.

You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed June 29, 2015, at Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE